Deborah DONOGHUE, Plaintiff,

v.

PATTERSON COMPANIES, INC.,
Nominal Defendant,

and

James W. Wiltz, Defendant.

No. 13 Civ.2033(JSR).

United States District Court,
S.D. New York.

Dec. 31, 2013.

David Lopez, Law Office of David Lopez, Southampton, NY, for Plaintiff.

Frank Alan Taylor, Briggs and Morgan, P.A., Minneapolis, MN, Jonathan David Berg, Jaffe & Asher LLP, New York, NY, for Nominal Defendant/Defendant.

## MEMORANDUM ORDER

JED S. RAKOFF, District Judge.

Plaintiff Deborah Donoghue alleges that Defendant James Wiltz, a director of the Patterson Companies, violated Section 16(b) of the Securities Exchange Act of 1934, which governs short-swing profits. She demands an accounting of profits and requests costs and attorneys' fees. On September 16, 2013, the defendants moved to dismiss the Complaint with prejudice.

After carefully considering the parties' briefing, the Court issued a "bottom-line" order on October 4, 2013, granting defendants' motion to dismiss. This Memorandum Order sets forth the reasons for that ruling and directs the entry of final judgment.

Section 16(b) of the Securities Exchange Act aims to prevent insiders from misusing inside information by holding them strictly liable for short-swing profits earned by trading the issuer's stock. The offense requires the plaintiff seeking to recover profits to prove that an insider realized a profit from purchasing a covered security and then selling it (or vice versa) within a six-month period. *See Gwozdzinsky v. Zell/Chilmark Fund, L.P.*, 156 F.3d 305, 308–09 (2d Cir.1998); *Donoghue v. Murdock*, No. 13 Civ. 1224, 2013 WL 4007565, at *4 (S.D.N.Y. Aug. 6, 2013). Here, it is alleged (and not disputed) that Wiltz is an insider and that he sold a covered security. *See* Memorandum of Law in Support of

Patterson Companies, Inc. and James W. Wiltz' Motion to Dismiss the Complaint, Sept. 19, 2013, at 1 [hereinafter "Def. MTD Mem."]. The issue presented by the instant motion to dismiss is whether Wiltz entered into a transaction that constitutes a matching "purchase" under Section 16(b) within six months of any sale.

Plaintiff alleges that the *settlement* of a prepaid variable forward contract constitutes a purchase within six months of Wiltz's sales under Section 16(b). Defendant argues instead that the contract's *execution* date is the relevant date on which a purchase or sale occurred, and that the execution date in this case occurred more than six months before any sale. This exact question of whether the relevant date is the execution date or the settlement date is pending before the Second Circuit in *Chechele v. Sperling,* 12–1769–cv (2d Cir. argued Mar. 12, 2013).

The Complaint alleges as follows: Wiltz is a director of Patterson Companies, Inc. Complaint, Mar. 26, 2013, ¶ 6. Wiltz allegedly violated Section 16(b) through the sale and deemed purchase of Patterson stock between October 2011 and March 2012. The transaction, however, was related to a prepaid variable forward contract that Wiltz entered into with Morgan Stanley on December 29, 2009. *Id.* ¶ 17.

The relevant terms of this contract were summarized in a Form 4 that Wiltz filed with the Securities and Exchange Commission ("SEC") on December 30, 2009, which the Court can consider on a motion to dismiss. *Faulkner v. Verizon Commc'ns, Inc.,* 156 F.Supp.2d 384, 391 (S.D.N.Y. 2001) (holding that, on a motion to dismiss, the court may consider documents integral to a plaintiff's claims, even if they are not explicitly incorporated by reference). The Form 4 states that:

> The Reporting Person (RP) [Wiltz] entered into a prepaid forward sale contract with an unaffiliated third party buyer [Morgan Stanley]. [Wiltz] agreed to deliver to [Morgan Stanley] up to 200,000 shares on the maturity date of the contract. [Wiltz] received $4,408,248 as of the date of contract. [Wiltz] pledged 200,000 shares (Pledged Shares) to secure his obligations under the contract. The number of shares to be delivered to the buyer on the maturity date is as follows:
>
> (a) if the value per share on the maturity date (Maturity Price) is less than $24.92 (Floor Price), [Wiltz] will deliver all the Pledged Shares;
>
> (b) if the Maturity Price is between the Floor Price and $34. 61 (CAP Price), [Wiltz] will deliver shares equal to $24.92 divided by the Maturity Price times the number of Pledged Shares; and
>
> (c) if the Maturity Price is greater than the CAP Price, [Wiltz] will deliver shares equal to the Pledged Shares times the ratio of $24.92 plus Maturity Price less $34.61 divided by Maturity Price, or the cash equivalent.

Wiltz, James W., Statement of Changes in Beneficial Ownership (Form 4) (Dec. 30, 2009) (Declaration of Jonathan D. Berg in Support of Motion to Dismiss ("Berg Decl."), Sept. 16, 2013, Ex. 2), at 1 n. 4.

On December 29, 2009, Wiltz pledged a maximum of 200, 000 shares for future delivery to PLC. Letter Agreement between Morgan Stanley & Co. Int'l PLC and The James W. Wiltz 2006 Revocable Trust, Pre–Paid Variable Delivery Forward Transaction (Jan. 5.2010) (Berg Decl., Ex. 1), at 2. In exchange, PLC paid Wiltz $4, 408, 248. *Id.* The contract's existence was reported on Wiltz' Form 4 filings through December 29, 2011. *See, e.g.,* Wiltz, James W., Statement of Changes in

Beneficial Ownership (Form 4) (Dec. 29, 2011) (Berg Decl., Ex. 3), at 1.

Wiltz and Morgan Stanley settled the contract on or about January 4, 2012. *Id.;* *see also* Plaintiff's Memorandum of Law in Opposition to Defendant's and Nominal Defendant's Motion to Dismiss the Complaint, Sept. 23, 2013, at 3 [hereinafter "Pl. MTD Opp."]. On that date, the closing price of Patterson stock was $29.74, so the parties applied the formula set forth in paragraph (ii) of the relevant contract section. Berg Decl., Ex. 1, at 3. Pursuant to the contract's terms, 167,600 of the 200,000 Pledged Shares were delivered to PLC, and 32,400 of the Pledged Shares were returned to Wiltz. Berg Decl., Ex. 3, at 1. Although Wiltz had the option to settle the transaction in cash, he did not elect that option. *See id.* at 1, tbl. I.

Plaintiff identifies four open-market sales within six months before and after December 29, 2011 to match the alleged "purchase" resulting from settlement of the contract: (1) 15,000 shares on October 27, 2011; (2) 30,000 shares on January 24, 2012; (3) 25,000 shares on February 28, 2012; and (4) 25, 000 shares on March 15, 2012. Complaint, ¶¶ 16, 17. Plaintiff alleges Wiltz realized a profit of $79, 500. *Id.* ¶ 18. Plaintiff argues that since the stock price on the settlement date was in the range between the floor and ceiling price, the return of shares to the borrower constituted a "purchase" under Section 16(b).

■ Section 16(b) of the Securities Exchange Act provides, in pertinent part:
For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer ..., any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) ... within any peri-od of less than six months, ... shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction....

15 U.S.C. § 78p(b) (2012). To plead a plausible claim for a violation of Section 16(b), plaintiff must plead facts sufficient to show that there is the purchase and sale (or sale and purchase) of a security not otherwise exempt from Section 16(b) within six months by an insider, and that the insider realized a profit. *Gwozdzinsky v. Zell/Chilmark Fund, L.P.,* 156 F.3d 305, 308–09 (2d Cir.1998); *Donoghue v. Murdock,* No. 13 Civ. 1224, 2013 WL 4007565, at *4 (S.D.N.Y. Aug. 6, 2013). Financial instruments that do not fall squarely into this framework are to be construed narrowly to favor the insider because of the strict-liability nature of Section 16(b). *See, e.g., Levy v. Southbrook Int'l Invs., Ltd.,* 263 F.3d 10, 16 (2d Cir.2001).

Both parties identify three cases involving prepaid variable forward contracts and Section 16(b). *See Murdock,* 2013 WL 4007565; *Chechele v. Sperling,* No. 11 Civ. 0146, 2012 WL 1038653 (S.D.N.Y. Mar. 29, 2012); *Donoghue v. Centillium Commc'ns Inc.,* No. 05 Civ. 4082, 2006 WL 775122 (S.D.N.Y. Mar. 28, 2006). All three cases support the defendant's view that the relevant purchase or sale date for the contract was that of the contract's execution.

■ *Chechele v. Sperling,* currently pending on appeal before the Second Circuit, is squarely on point. The case involves the exact same Section 16(b) claim, type of contract, and allegations about whether the returned shares constituted a "purchase" as of the settlement date. *Chechele,* 2012 WL 1038653, at *1–2. Judge Crotty granted defendants' motion to dismiss because the portion of shares

retained upon settlement of the contract was determined years earlier and the contract was not subsequently modified. *Id.* at *5. As Judge Crotty noted, the defendants "had no opportunity to speculate on the basis of their inside information at the time of the settlements." *Id.* at *4–5. As a result, he concluded that the defendants' rights "became fixed and irrevocable at the time they entered into the [contracts]." *Id.* at *5 (internal quotation marks omitted).

The complaint in the second case, *Donoghue v. Murdock,* was similarly dismissed by Judge Engelmayer under Rule 12(b)(6) in August 2013. *Donoghue v. Murdock,* No 13 Civ. 1224, 2013 WL 4007565 (S.D.N.Y. Aug. 6, 2013). It involved the same plaintiff as in this case and a similar contract, but required the court to characterize a different part of the contract as a sale, not as a purchase. Still, its analysis and conclusions are instructive. The plaintiff argued that the defendant's decision to turn over his shares on the settlement date constituted a Section 16(b) sale. However, Judge Engelmayer rejected this argument, primarily by looking to whether the contract presented opportunities for the insider to use inside information and exercise discretion at the time of settlement. *Id.* at *5, *9–11. He concluded that the defendant "lost any ability to control" the transaction after entering into it. *Id.* at *9.[1]

The third case, *Donoghue v. Centillium Communications Inc.,* is also factually similar. No. 05 Civ. 4082, 2006 WL 775122 (S.D.N.Y. Mar. 28, 2006). In that case, the same plaintiff as in this matter alleged that

the transfer of all pledged shares at settlement constituted a Section 16(b) sale. *Id.* at *4. Judge Pauley concluded that the relevant transaction took place at the acquisition of the forward purchase agreement for reasons very similar reasons to those discussed in the two subsequent cases. *See id.* at *4–5. The defendant was obligated to settle the transaction, and any opportunity to manipulate the transaction based on insider information was present only at the contract's inception. *Id.* at *5. Like Judge Engelmayer, Judge Pauley also rejected the argument that the failure to exercise an option to settle in cash constituted a Section 16(b) sale. *Id.* at *4–5.

In this case, plaintiff, seeking to overcome the rationale of these prior cases, argues that speculative abuse is possible with this financial instrument. Thus, the plaintiff points to the SEC's warnings about the potential for abuse of floating price derivative securities. *See* Pl. MTD Opp., at 12 (citing Ownership Reports and Trading by Officers, Directors and Principal Security Holders, Exchange Act Release No. 34–28869, 1991 SEC LEXIS 171 (Feb. 8, 1991)). Plaintiff also argues that she only need show that there is the *potential* for misuse of insider information in settling the contract. *Id.* at 13.

While that might be correct in the abstract, *see, e.g., Kern Cnty. Land Co. v. Occidental Petroleum Corp.,* 411 U.S. 582, 599, 93 S.Ct. 1736, 36 L.Ed.2d 503 (1973), plaintiff misunderstands the relevant transaction here. Here, the obligations

---

1. Judge Engelmayer also rejected the argument that the settlement in the middle range between the ceiling and floor price constituted a "floating" price component, which is not subject to the rules for derivative securities under Section 16(b). *Murdock,* 2013 WL 4007565, at *9. The court concluded that the defendant had the obligation to sell the shares

once he entered into the contract. *Id.* Finally, Judge Engelmayer rejected the plaintiff's contention that the defendant's decision not to exercise an option to settle the transaction in cash constituted a "sale." *Id.* at *10 (citing *Magma Power Co. v. Dow Chem. Co.,* 136 F.3d 316, 325 (2d Cir.1998)).

are fixed at the contract's execution. *See Donoghue v. Murdock*, No. 13 Civ. 1224, 2013 WL 4007565, at *9 (S.D.N.Y. Aug. 6, 2013). Even if the transaction has a floating price component, the defendant is obligated to follow the contract's predetermined terms at settlement. The insider cannot use insider information to affect the final settlement because he has no discretion after contract execution.

Alternatively, the plaintiff contends that the insider can apply pressure on the stock price as the settlement day nears. Pl. MTD Opp., at 9. However, the relevant kind of insider influence targeted by Section 16(b) is the use of *informational* advantages to generate profits, not the use of market power to drive up share price improperly. *See, e.g., Donoghue*, 2013 WL 4007565, at *10.

■ Plaintiff also contends that the regulations implementing Section 16(b), along with other SEC documents, require the Court to find that there was a purchase upon *settlement* of the prepaid variable forward contract. Pl. MTD Opp., at 3–7. Plaintiff's argument rests first on the distinction in the regulation between "derivative securities"[2] and other securities. Specifically, derivative securities do *not* include securities with "an exercise or conversion privilege at a price that is not fixed. . . ." Rule 16a–1(c)(6), 17 C.F.R. § 240.16a–1(c)(6). Plaintiff argues that the instant forward contract is not at a fixed price, meaning that it is not a derivative security. If the contract is a derivative security, then the relevant date of purchase or sale is that of execution, and not of exercise or settlement. *See* Rule 16b–6(a), (b), 17 C.F.R. § 240.16b–6(a), (b). However, for non-derivative securities with a floating price, the date on which the price becomes fixed—which, plaintiff argues, is the settlement date of the forward contract—is relevant for determining when a security is purchased or sold. *See* Rule 16b–6(a), 17 C.F.R. § 240.16b–6(a).[3] Moreover, even if there is a floating component to the transaction, the transaction is exempt from Section 16(b) liability at settlement as long as the insider is irrevocably obligated to settle a transaction at a certain date and have the price calculated by a pre-set formula. *See, e.g., Donoghue v. Murdock*, No. 13 Civ. 1224, 2013 WL 4007565, at *8–9 (S.D.N.Y. Aug. 6, 2013); *Chechele v. Sperling*, No. 11 Civ. 0146, 2012 WL 1038653, at *5 (S.D.N.Y. Mar. 29, 2012).[4]

**2.** A derivative security is defined as "any option, warrant, convertible security, stock appreciation right, or similar right with an exercise or conversion privilege at a price related to an equity security, or similar securities with a value derived from the value of an equity security, but shall not include: ... (6) [r]ights with an exercise or conversion privilege at a price that is not fixed." Rule 16a–1(c), 17 C.F.R. § 240.16a–1(c).

**3.** "The establishment of or increase in a call equivalent position or liquidation of or decrease in a put equivalent position shall be deemed a purchase of the underlying security for purposes of Section 16(b) of the Act, and the establishment of or increase in a put equivalent position or liquidation of or decrease in a call equivalent position shall be deemed a sale of the underlying securities for purposes of Section 16(b) of the Act; Provided, however, That if the increase or decrease occurs as a result of the fixing of the exercise price of a right initially issued without a fixed price, where the date the price is fixed is not known in advance and is outside the control of the recipient, the increase or decrease shall be exempt from Section 16(b) of the Act with respect to any offsetting transaction within the six months prior to the date the price is fixed." Rule 16b–6(a), 17 C.F.R. § 240.16b–6(a).

**4.** Plaintiff also argues that component analysis provides a basis for finding that the contract at issue is not a derivative security. *See* Pl. Opp. Mem., at 11–12. Some courts considering hybrid derivatives—*i.e.*, those with

Finally, plaintiff points to the potential abuse of insider information that could result from the defendant's option to settle the contract in cash, instead of with stock. Pl. MTD Opp., at 8–10. The plaintiff adds that if the insider had information suggesting that the stock price would go up, he or she would be more likely to settle in cash and retain the shares. *Id.* at 8. However, a Second Circuit decision precludes consideration of the option to settle in cash as a "purchase" where the insider did not exercise the option. *See Magma Power Co. v. Dow Chem. Co.,* 136 F.3d 316, 325 (2d Cir.1998) ("A failure to purchase . . . is not a sale."). As two decisions from this District rightly concluded, *Magma Power* precludes the court from considering the *non-exercise* of a cash-settlement option as a purchase of the underlying security. *See Murdock,* 2013 WL 4007565, at *9; *Centillium Commc'ns Inc.,* No. 05 Civ. 4082, 2006 WL 775122, at *5 (S.D.N.Y. Mar. 28, 2006). At most, the date that the "option" to settle in cash is purchased—the date of the contract's execution—is the date any security was purchased.

Accordingly, for the above-stated reasons, the Court confirms its bottom-line order of October 4, 2013 and dismisses the Complaint with prejudice. The Clerk of the Court is hereby directed to enter final judgment in favor of defendants and close the case.

SO ORDERED.

---

fixed and variable price components—have assessed them through "component analysis." *See, e.g., Murdock,* 2013 WL 4007565, at *5. Component analysis requires the court to "treat as analytically distinct each option contained in the instrument and consider them in turn." *Id.* (citing, *e.g., Analytical Surveys, Inc. v. Tonga Partners, L.P.,* 684 F.3d 36, 50 (2d Cir.2012)). However, plaintiffs fail to show why this contract could not be replicated using a combination of instruments that are clearly derivative securities.